Brockenbroitgh, J.
As to the first bill of exceptions,—it is laid down by the elementary writers on the law of evidence, as a principle, that the interest to disqualify a person from being a witness, must be some legal, certain and immediate interest in the result of the cause, and that a mere uncertain or contingent interest will not render him incompetent. 2 Stark. Law Ev. part 4. page 745. The principle is founded on adjudged cases to which it is unnecessary to refer. Let us see how far it applies to the case before us. Bransford, the *250 serjeant, who is the mere nominal plaintiff in the cause, was offered as a witness by the defendants: he was willing to testify, but the relator M ’ Intosh the real plaintiff, objected to him as incompetent, and the court repuge(j t0 a]]_ow pim give evidence. The ground taken by the court, was, that Bransford might be hable to the plaintiff, the relator, for the amount of the judgment which he might shew himself entitled to recover in this action, if the obligors in the bond on which the suit is brought, should prove to be insufficient; which liability would be removed, if the defendants should have a verdict and judgment in their favour. The ground of the decision is expressed in forcible terms, but I am not satisfied that it is correct. It is true, that if Bransford gives evidence to defeat the action of the. relator, by shewing that he is not entitled to the property he claims, hec removes from himself the liability of being sued by the relator, even though the obligors in the bond should become insolvent. But is that a direct and immediate interest, or only an uncertain and contingent one f The seijeant is not hable to the action of the claimant, even though he should shew his title to the property, and recover on the bond, “ unless the obligors in the bond shall become insolvent,” by the express terms of the statute. If the claimant should bring his action against the serjeant, it will not be sufficient for him to shew, that he has established his claim to the property in the action on the indemnifying bond; he must go further, and shew that the serjeant failed in his official duty, in not taking a solvent bond, or in talcing one in which the obligors have since become insolvent. The interest which attached to the seijeant when the defendant called on him to give evidence in his behalf, in this suit upon the indemnifying bond, was not a direct and immediate interest in the result of the suit, because be that result what it might, it would not alone be sufficient to charge him. A verdict and judgment in behalf of M’Intosh *251 against the obligors in the bond, would not, per se, render the witness liable to the action of M'Intosh: something else, dehors this suit, must be shewn, to render Bransford liable ; namely, the insolvency of the obligors, which is a question that could not be examined, in the suit on the bond. The evidence of Bransford in ¡ the suit on the bond, even though it should defeat the action of M'Intosh, whilst it relieves him from any suit by M'Intosh, does not necessarily relieve him from any loss or injury: for, peradventure, M'Intosh, if he could bring his action against Bransford, might not be able to shew that the obligors in the bond were insolvent, but on the contrary, Bransford might be able to shew that they were, and continued to be perfectly solvent. It was altogether uncertain, whether any loss would result to Bransford, from an action by M'Intosh against him; and therefore his interest in removing from himself all liability to that action, was equally uncertain, and entirely contingent, and is not such an interest as would disqualify him from being a witness. The case of Stewart v. Kip, 5 Johns, Rep. 256. is a strong one in support of this opinion, and seems to run on all fours with this case. That was an action of debt against Kip as sheriff, for the escape of a prisoner taken on a ca. sa. at the suit of the plaintiff. Bease was a deputy of Kip, and jailor, and in that character had the prisoner in his custody, and took a bond from him for the liberties of the prison. He was offered as a witness by the defendant; and the question was as to his competency. It was admitted, that he was not answerable to his principal for the escape of the prisoner. His only interest resulted from his having taken the bond for the liberties, and it depended on the solvency of the obligors, and whether he had acted fairly, and honestly in taking it. Judge Spencer, in delivering the opinion of the court, said—“ The witness, in the present case, not being called, to justify any act of his own, or to disprove any *252 negligence imputable to him, having no concern with the gist of the action between the parties, and his liability over being very doubtful, depending on various facts not involved in the trial of this cause, his interest was too remote and contingent, to exclude him from testifying.” A new trial was therefore awarded, the judge on the circuit having excluded him as a witness. I am of opinion, that the court erred in excluding Bransford as a witness for the defendants.
Then, as to the second bill of exceptions. M’Intosh brought the action to recover the value of his property, sold by the serjeant as the property of Hazlewood. He could only expect to recover damages proportioned to the injury he had sustained. That injury depended, in a great degree, on the extent of his interest in the property. If he had the whole absolute interest, he had a right to recover the whole value of the subject sold; but if he had only a life estate in the property, surely he could not recover the full value, but only the value of the life interest. The relator claimed under a bill of sale from Hazlewood, which purported to pass to him the whole absolute property; but if the vendor, in fact, owned no such interest, but only a life interest, he could not pass the absolute property by that or any other instrument, but only the estate which he held. It was, therefore, competent for the defendants to prove, that the vendor had only a life estate, and consequently that the relator M’lntosh had no more.
It was urged, that the action on the indemnifying bond was substituted for the action which the common law gave, of trespass against the sheriff for selling the plaintiff’s property; and that, as in such action the plaintiff might recover vindictive damages, so in this action he might recover vindictive damages against the defendants. • Admitting this to be true (which, however, is not, I think, necessary to be decided), that would afford no reason, why the defendants should not be allowed to *253 prove the interest which the relator really held in the property. Proof that the estate held by him was less than he claimed, would not interfere with any otherlegal proof which he might adduce tending to aggravate the damages. Such proof, if proper when the relator caims the absolute estate, cannot be improper, when he owns only the life estate. I am of opinion, that the court erred in rejecting the evidence set forth in the second bill of exceptions.
Carr, J.
In Baring v. Reeder, 1 Hen. & Munf. 154. 164. and Richardson v. Carey, 2 Rand. 87. it is laid down, as a genero,] rule, founded on Bent v. Baker, 3 T. R. 27. and other english cases, that a witness is competent, if die proceedings in the cause cannot be used as evidence for him, though he may entertain wishes on the subject, and even have occasion to contest the same question, in his own case, in a future action; and Bulier said in Bent v. Baker, he took the true line to be, is the witness to gain or lose by the event of the cause ? Now, let us see how Bransford stands in this respect. Will he gain or lose by the event of this cause? As he is a nominal party merely, not liable even for costs, the verdict and judgment cannot, per se and immediately, take a cent of money out of his pocket, or put a cent into it. If' it affect him at all, it must be mediately and by consequence. How can it do so? Can a verdict and judgment for the plaintiff have this effect? That can only shew, that the plaintiff had suffered damage to a certain amount by the sale of the slave; and for this, his recovery is on the bond executed by Stevens and his sureties ; a bond given for the relief and security of the officer levying the execution, and which bars the action against him, of the person claiming the property sold, “ unless the obligors in the bond shall become insolvent.” It is not, then, the recovery in this action, which can affect the officer, for the satisfaction of that, is amply provided *254 for, by the indemnifying bond with surety: it is only the carelessness or negligence of the officer, in failing to take a bond with solvent obligors, which can charge him. The question of the' solvency or insolvency of these obligors, cannot possibly be tried in this action; and until their insolvency be established, the officer cannot be interested in the event of this cause. How, then, can he have that certain and immediate interest, which touches the competency of a witness ? I think this exception was well taken.
I am compelled to differ from the circuit court, on the other point also. This suit was brought to recover all damages which the plaintiff sustained by the seizure and sale of the slave: such are the terms of the bond. By what terms are we to measure those damages? Surely, the value of the slave forms an element in the question of damages. It would be pertinent to inquire, whether he was old, decrepid and worthless, or young, healthy and valuable. The price M’Intosh gave for him, though expressed in his bill of sale, would no more fix the amount of damages, than the price for which the officer sold him. All the facts affecting his real value, would be relative and proper evidence. Is not the quantity of interest one of these ? Suppose Hazlewood owned this slave for life, who was old, feeble, and unhealthy; would not an interest, held by such a tenure as this, be much less valuable, than the absolute property in a young slave ? And why is the defendant to be deprived of this evidence, so important, so directly pertinent to the issue ? Because, we are told, he bought the absolute property honestly, and his vendor not being a party to this suit, his title shall not be impeached in it. But it is the title of the plaintiff. He says, “ you have seized and sold my slave, to my damage so much;” and this is the issue. He claims by bill of sale from Hazlewood; he produces this to shew his right: all must agree, that Hazlewood could sell no greater right than *255 he had. And yet the defendant is not to be admitted to prove what that is. The plaintiff may shew the bill of sale to prove that ho got from Haz'lewood the absolute estate, and the defendant shall not prove, though he could by the clearest evidence, that the vendor had no such interest to sell, but was tenant for life only. Why should the bill of sale be conclusive to prove the quantity of interest, any more than the quantity of damage? The price given does not fix this last; why should it fix the title ? I can see no reason. A derivative title must depend on its primitive. I think the judgment should be reversed on both points, and sent back with proper instructions.
Cabell, J.
I have felt much difficulty in making •up my mind on the first bill of exceptions, as to the exclusion of Bransford’s testimony; and, in the course of my reflections, have experienced no little vibration of opinion. I have, however, come to the conclusion, at last, that he was properly excluded. In Bent v. Baker, 3 T. R. 27. the leading case on this branch of the law, lord Kenyon, said,—“ the question, whether a witness be competent or incompetent, amounts to this, whether the record in that cause will affect his interest”—“ I think the principle is this; if the proceedings in the cause cannot be used for him, he is a competent witness, although he may entertain wishes on the subject.” And Buller, J. said, “ the true line I take to be this, is the witness to gain or lose by the event of the cause ? Now this witness could not gain or lose by the event of this cause, because the verdict could not be evidence for or against him, in any other suit.” In Smith v. Prager, 7 T. R. 60. the rule laid down in Bent v. Baker, was fully confirmed. Lord Kenyon (the whole court concurring with him) thus expressed himself: “ The rule there laid down was, that no objection could be made to the competency of a witness, upon *256 the ground of interest, unless he were directly interested in the event of the suit, or could avail himself of the verdict in the cause, so as to give it in evidence, on any future occasion, in support of his own interest.” And the same rule was laid down in all its force, by this court, in Baring v. Reeder, 1 Hen. & Munf. 154. It is true, that the interest to disqualify a witness, must be a direct and immediate interest, or, as it is sometimes expressed, must be a present, certain and vested interest, and not uncertain and contingent.'' The true question, then, is, What is a direct and immediate, present, certain and vested interest, as distinguished from one that is doubtful, uncertain and contingent ? I think this question is correctly answered by Starkie (Law. Ev. part 4. page 745.), where referring to Bent v. Baker and Smith v. Prager, he says, that, “ a party has such a direct and immediate interest in the event of a cause, as will disqualify him, -where the necessary legal consequence of a verdict, will be to better his situation, by either securing an advantage, or repelling a loss;” or (as he more fully expresses the same idea, Ibid. 747.) where, “ it would be the instrument of securing to him some advantage, or of repelling some charge against him, or claim upon him, in a future proceeding.” ' Indeed, the very essence of a dhect and immediate interest of a witness in the event of a suit, as explained by lord Kenyon in Smith v. Prager, is, that “ he could avail himself of the verdict in the cause, so as to give it in evidence, on any future occasion, in support of his own interest.” These principles must' decide the case before us. I think the case of Bransford comes clearly within them. He is the guarantor to the relator, of the solvency of the parties bound in the indemnifying bond, the defendants in this action. But if the defendants get a verdict on the merits, Bransford is forever discharged from all responsibility to the relator, even although all the parties to the bond were, in fact, insol *257 vent; because the verdict shews that the relator had nó title to the property, and consequently can never recover, from any body, damages for its seizure. This verdict, therefore, would put to rest, forever, all future inquiry as to iBransford’s liability; or if any action should be brought against him on the subject, the verdict in this action would be conclusive evidence to establish his exoneration. If this be not a direct interest, in the event of a suit, I know not what is. The case of Stewart v. Kip, 5 Johns. Rep. 256.1 must confess, appears very similar to this; and that case was decided, differently from the manner in which I think this should be decided. But while I entertain the highest respect for the court which pronounced that decision, I cannot yield to the reasons assigned for it, and am not bound by it as authority.
But I think the circuit court erred in the opinion expressed in the second bill of exceptions: ¿as to which I concur with the other judges.
Brooke, J.
My first impression of this case, was, that the judge below was right in rejecting the witness Bransford as incompetent. In looking into some of the modern cases, in which the courts have seemed strongly inclined to get rid of objections to competency, and to leave the credit of the witness to the jury, I began to doubt the correctness of that impression: but upon more reflection, and looking more steadily at the principles upon which objections to the competency of witnesses are sustained, I think my first impression was correct. If‘a witness is directly interested in the verdict, he is incompetent; if he is only remotely, or on some contingency, interested in the verdict, he is not incompetent. Now, I think the witness in this case, was directly interested in the verdict. The statute substitutes the indemnifying bond for the liability of the sheriff or serjeant, for taking the property of a party, *258 .not subject to the execution levied on it, if the sureties are solvent. But the officer is the guarantor of their solvency, and must be directly interested in a verdict that forever absolves him from his responsibility. His con^ngent liability in the event that the sureties in the bond prove insolvent, will no longer exist, if the verdict be for the defendant, that being conclusive against any other suit on the bond, by which the insolvency of the sureties in the bond might be shewn. If he is a competent witness to get such a verdict, though he may have knowingly taken insolvent security, lie puts an end to his contingent liability, and defeats the object of the statute, which was to substitute the liability of the sureties in the bond to his liability, if the sureties in the bond are solvent, and not otherwise. By his testimony he puts an end to that question, as no suit can again be brought on the bond to test it. He has, then, a direct interest in the verdict according to the letter and spirit of the statute. I need not cite cases to shew, that a witness having a direct interest in the verdict is incompetent. In Bent v. Baker, lord Kenyon puts the question of competency thus: whether the "record in the case will affect his interest ? If the proceedings in the cause cannot be used for him, he is a competent witness. Now, I think nothing can be more clear, than that the record in this case will affect his interest, and that the proceedings in the cause can be used for him. I will not cite other cases: Bent v. Baker has never been questioned.
On the second bill of exceptions, I have had less doubt. In an action on the bond of indemnity, the true question must be what damage has the plaintiff sustained by the seizure and sale of his property. If he has a life estate or less interest in it, his damage must be according to the extent of his interest. The evidence stated in the second bill of exceptions, ought to have gone to the jury. For this error, I think the judgment must be reversed, and a new trial awarded, *259 in which the evidence stated in this bill of exceptions must go to the jury.
Judgment entered, that the circuit court erred in rejecting the evidence mentioned in the second bill of exceptions; therefore, judgment of the circuit court reversed, with costs, the verdict set aside, and. the cause remanded &c.